FILED

2014 Jul-03  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JERMAINE TILLMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 4:13-cv-00358-CLS-HGD |
| | ) | |
| M. DESNIDES, et al., | ) | |
| | ) | |
| Defendants | ) | |

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Plaintiff, Jermaine Tillman, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at St. Clair Correctional Facility.  Plaintiff names as defendants Correctional Officers Michael Desindes,[1] Chad Cleveland, Wilbert Howard, Michael Anderson, Michael Lowery, and Justin Moore.  Plaintiff seeks monetary and declaratory relief.

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

---

[1] Incorrectly referred to as "M. Desnides" in the complaint.  (Compl. at 1).

## I.  PROCEDURAL HISTORY

On August 27, 2013, the court entered a revised Order for Special Report, directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of plaintiff's complaint.  (Doc. 10).  The court advised defendants that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*Id*.)  By the same order, the court advised plaintiff that after he received a copy of the Special Report submitted by defendants, he should file counter-affidavits if he wished to rebut the matters presented by defendants in the Special Report.  (*Id*.)

On September 12, 2013, defendants filed a Special Report accompanied by affidavits and other institutional documents.  (Doc. 11).  The court notified plaintiff that defendants' Special Report would be construed as a motion for summary judgment and he would have twenty (20) days to respond by filing affidavits and other material if he chose.  (Doc. 20).  The court also advised plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Plaintiff filed responses to

defendants' motion for summary judgment on January 9 and February 24, 2014. (Docs. 19 & 21).

## II.  SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prime facie* case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

### III.  SUMMARY JUDGMENT FACTS

Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to plaintiff.[2]

On February 10, 2013, plaintiff was housed in the segregation unit at St. Clair Correctional Facility.  (Compl. at 3).  Segregation inmates are allowed to shower every two days.  (Doc. 19 at 2).  All segregation inmates are required to shave before showering.  (*Id*.)  Plaintiff uses a shaving powder product that is specifically designed for African-American men.  (Doc. 19 at 2; Ex. 1).  When the shaving powder is mixed with water, it causes an unpleasant order.  (Doc. 19 at 2).

---

[2]  Factual disputes made by defendant are addressed in footnote form.

As Correctional Officer Michael Desindes was handcuffing plaintiff through the tray slot to escort him to the shower, plaintiff accidently got some of the shaving powder on defendant Desindes' hands.  (Doc. 19 at 2; Ex. 2, Tillman Aff. at 1).  Defendant Desindes became physically aggressive towards plaintiff and "violently ben[t]" plaintiff's arms while his arms were outside the tray slot and called him a "'stupid motherfucker.'"  (Doc. 19 at 3; Ex. 2, Tillman Aff. at 1).  Defendant Desindes removed plaintiff's handcuffs and told plaintiff that he was not going to be allowed to shower.  (*Id.*)

Inmates confined to plaintiff's block who witnessed the incident summoned Sergeant Cook and Lieutenant Jerome Gray to the block.  (Doc. 19 at 3; Ex. 2, Tillman Aff. 1-2).  Plaintiff explained to both supervisors what had taken place. (Doc. 19 at 3; Ex. 2, Tillman Aff. at 2).  Sergeant Cook escorted plaintiff to the shower.  (*Id.*)  Both Lieutenant Cook and Sergeant Cook then left the block.[3] (Doc. 19 at 3).

---

[3]  Plaintiff did not allege in his complaint that Defendant Desindes used excessive force against him by bending his arms while they were extended through the tray slot.  Neither did plaintiff seek leave to amend his complaint to add this claim after the court entered its Order for Special Report.  Because defendants were not given an opportunity to respond to plaintiff's claim that Defendant Desindes used excessive force against him by bending his arms through the tray slot prior to his shower, the court will not consider this claim. The court mentions these alleged facts only to give context to plaintiff's claim that Defendant Desindes later assaulted him.

When plaintiff finished showering, Correctional Officer Chad Cleveland handcuffed plaintiff to the rear and led him upstairs. (Compl. at 3; Doc. 19, Ex. 2, Tillman Aff. at 2). Instead of escorting plaintiff to his assigned cell, Defendant Cleveland instructed plaintiff to step outside the cellblock unit into the D-E hallway where Correctional Officers Wilbert Howard, Michael Desindes, Michael Anderson, Michael Lowery, and Justin Moore were waiting.[4] (Compl. at 3).

Defendant Desindes approached plaintiff and yelled, "Why did you tell [Lieutenant] Gray and [Sergeant] Cook that lie saying you didn't wipe shaving powder on me?" (Doc. 19, Ex. 2, Tillman Aff. at 2). Plaintiff responded that defendant Desindes knew plaintiff accidently got shaving cream on him and it was not intentional. (*Id*.) Defendant Desindes then hit plaintiff in the face. (Compl. at 4; Doc. 19, Ex. 2, Tillman Aff. at 2). Defendants Howard and Cleveland began to punch and hit plaintiff about his head and face. (*Id*.) Next, defendants Howard and Desindes grabbed plaintiff by his head and rammed his head into the glass barbershop window, cracking the window with his head.[5] (Doc. 19, Ex. 2, Tillman Aff. at 2).

---

[4] Plaintiff contends that ordering an inmate into a hallway is a standard tactic by certain ADOC employees to beat the inmate in a secluded area to avoid inmate witnesses. (Doc. 19 at 3-4; Doc. 21, Duncan Aff. at 1-2).

[5] Defendant Howard states that on the night of February 10, 2013, he was operating E-Cubicle and did not witness any misconduct by the officers in question. (Doc. 11, Ex. 3, Howard Aff. at 1). Howard does not address plaintiff's claims that he used excessive force against plaintiff. (*Id*.)

Plaintiff fell to the floor. (Compl. at 4-5). Defendants Desindes, Cleveland, and Howard punched, kicked, and beat plaintiff for approximately two to three minutes while plaintiff was on the floor. (*Id*.) Plaintiff remained handcuffed during the entire assault.[6] (Compl. at 5).

Defendants Anderson, Lowery, and Moore witnessed the assault but failed to intervene. (Compl. at 5). Instead, they urged the other officers to continue beating plaintiff and tried to cover up the assault.[7] (*Id*.)

---

[6] Defendant Desindes alleges that on February 10, 2013, he and Officer Michael Anderson were escorting plaintiff back to his cell from the shower when plaintiff kicked defendant Desindes in the lower back. (Doc. 11, Ex. 1, Desindes Aff. at 1). Desindes claims Officer Anderson grabbed plaintiff by his right arm and Desindes grabbed plaintiff by his left arm. (*Id*. at 2). Desindes alleges he and Anderson removed plaintiff from D-Block and into the hallway because inmates began to cause an uproar and were overly excited. (*Id*.)

Desindes states that he and Anderson were escorting plaintiff to the segregation office to speak with a supervisor when plaintiff became combative and aggressive by jerking his arms and kicking his feet. (Doc. 11, Desindes Aff. at 2). Desindes claims he took hold of plaintiff's right shoulder and left arm, and placed him on the left side of the hallway. (*Id*.) He states, "it just so happen[ed] that the side I placed inmate Tillman on had a window to the D/E barber shop. Inmate Tillman struck the window causing it to crack." (*Id*.) Desindes claims he went to his left side because it was closer and Officer Anderson was blocking his right side. (*Id*.) He states that defendant Cleveland, who was showering inmates, heard the commotion and notified Lieutenant Gray. (Doc. 11, Desindes Aff. at 2).

[7] Defendant Lowery alleges that on February 10, 2013, he was at his post in E-Block, escorting inmates to and from the shower. (Doc. 11, Ex. 5, Lowery Aff.). He claims that he did not witness the alleged incident and does not have any knowledge of it. (*Id*.)

Defendant Anderson states that on February 10, 2013, he and Desindes were escorting plaintiff from the shower when plaintiff struck Desindes in the back with his foot. (Doc. 11, Ex. 4, Anderson Aff. at 1). Anderson claims that he and Desindes grabbed plaintiff's arms and escorted plaintiff to the hallway where plaintiff became combative. (*Id*.) Anderson states plaintiff "was placed against the wall striking his head on the barbershop window." (*Id*.)

While plaintiff was lying on the floor, defendant Anderson stood over him and said, "Get up and go back to your cell and don't say nothing about what just happened." (Doc. 19, Ex. 2, Tillman Aff. at 2). Plaintiff told defendant Anderson that he wanted to see Lieutenant Gray and Sergeant Cook and that he needed to go to the infirmary for medical assistance. (*Id*.) Defendants Cleveland and Anderson warned plaintiff that if he insisted on going to the infirmary and talking with either supervisor, he would be written up for assaulting defendant Desindes to justify defendants beating plaintiff. (Doc. 19, Ex. 2, Tillman Aff. at 2). Plaintiff refused to get up.[8] (*Id*.)

Plaintiff alleges that defendant Moore called Lieutenant Gray and Sergeant Cook to the scene. (*Id*.) Lieutenant Gray escorted plaintiff to the Health Care Unit for a body chart. (*Id*.) Plaintiff sustained three small superficial tears to the mucous

---

Defendant Moore alleges that on February 10, 2013, he was assigned to D Cubicle. (Doc. 11, Ex. 6, Moore Aff. at 1). He states that at 8:20 p.m., Desindes and Anderson were escorting plaintiff to his cell when plaintiff kicked Desindes in the back. (*Id*.) He claims Anderson and Desindes grabbed plaintiff by the arms to regain control of him. (*Id*.) Moore contends that while escorting plaintiff out of the block to the segregation office to report the incident, plaintiff became combative. (*Id*.) Moore states that as a result, Desindes "placed plaintiff against the barbershop window." (Doc. 11, Ex. 6, Moore Aff. at 1). He alleges that Lieutenant Gray and Sergeant Cook then entered the D-E hallway and escorted plaintiff to the office. (*Id*.)

[8] Defendant Cleveland claims that while he conducted showers in E-Block, he heard a loud commotion in D-E Hallway. (Doc. 11, Ex. 2, Cleveland Aff. at 1). He stepped out into the hallway and observed that Desindes and Anderson had plaintiff in handcuffs and in an escort position against the wall where the barbershop is located. (*Id*.) Cleveland states that Desindes asked him to get a supervisor. (*Id*.) Cleveland walked to the segregation office and notified Lieutenant Gray and Sergeant Cook that Desindes and Anderson needed them in D-E Hallway. (*Id*.) Cleveland claims he has no further knowledge of the incident. (*Id*.)

membrane inside the left side of plaintiff's mouth.  (Doc. 11, Ex. 7 at 12).  There was slight swelling noted on the left side of plaintiff's cheekbone and the temporal area on the left side of plaintiff's head.  (*Id*.)  Plaintiff also had a 3-cm swelling on the side of his head approximately 3-4 inches past his ear.  (*Id*.)  Plaintiff was then returned to his cell.  (Doc. 19, Ex. 2, Tillman Aff. at 2).  A short time later, plaintiff "passed out" in his cell and Sergeant Cook took him back to the infirmary.  (Doc. 19, Ex. 2, Tillman Aff. at 2-3).  The on-duty nurse diagnosed plaintiff with a mild concussion. (*Id*. at 3).

Defendant Desindes was also examined in the Health Care Unit.  (Doc. 11, Ex. 7 at 21).  Nurse Ferris noted a pink area on Desindes's lower back.  (*Id*.)

Captain Sanders noted in an investigative report regarding the February 10, 2013, incident that there were "[too] many unanswered questions and inconsistencies in this incident report."  (Doc. 11, Ex. 7 at 2).  Sanders stated that after talking with the officers and inmates involved, he recommended that the incident be investigated further.  (*Id*.)

Defendant Desindes wrote plaintiff a disciplinary for assault on a DOC official. (Doc. 11, Ex. 1, Desindes Aff. at 2).  Plaintiff was later found guilty after a disciplinary hearing.  (Doc. 11, Ex. 7 at 4).

# IV.  DISCUSSION

## A.  <u>Sovereign Immunity</u>

To the extent plaintiff's constitutional claims are brought against the defendants in their official capacities for money damages, his claims are due to be dismissed under the doctrine of sovereign immunity.  It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest."  *Id*. at 101.  Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment.  *Id*. at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2 (11th Cir. 1990).

Based on the foregoing, the defendants' motion for summary judgment on plaintiff's claims against them in their official capacities for monetary relief is due to be granted.  The remainder of this report and recommendation will address plaintiff's claims against the defendants in their individual capacities.

**B.** **Eighth Amendment Excessive Force – Defendants Desindes, Cleveland & Howard**[9]

Plaintiff alleges that on February 10, 2013, defendant Desindes was handcuffing plaintiff through the tray slot for a shower when Desindes accused plaintiff of wiping shaving powder on him.  Plaintiff claims that after he finished showering, defendant Cleveland handcuffed plaintiff to the rear and led him upstairs. He states that instead of escorting plaintiff to his assigned cell, defendant Cleveland instructed plaintiff to step outside the cellblock unit into the D-E hallway where defendants Howard, Desindes, Anderson, Lowery, and Moore were waiting.

Plaintiff alleges that defendant Desindes approached plaintiff and yelled, "Why did you tell [Lieutenant] Gray and [Sergeant] Cook that lie saying you didn't wipe shaving powder on me?"  (Doc. 19, Ex. 2, Tillman Aff. at 2).  Plaintiff responded that defendant Desindes knew plaintiff accidently got shaving cream on Desindes and it was not intentional.  Plaintiff claims defendant Desindes then hit plaintiff in the face

---

[9]  Plaintiff attempts to also bring his excessive force and failure to protect claims under the Fourteenth Amendment's Due Process Clause.  (Compl. at 6).  "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Since plaintiff is a convicted prisoner, his excessive force and failure to protect claims will be analyzed under the Eighth Amendment.  However, the applicable standard is the same for claims involving the mistreatment of pre-trial detainees and convicted prisoners whether brought under the Eighth or Fourteenth Amendments.  *See Daniel v. U.S. Marshal Serv*., 188 Fed. App'x 954, 961-62 (11th Cir. 2006); *see also Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)).

and defendants Howard and Cleveland began to punch and hit plaintiff about his head and face.  He states that defendants Howard and Desindes then grabbed plaintiff by his head and rammed his head into the glass barbershop window, cracking the window.

After plaintiff fell to the floor, he claims defendants Desindes, Cleveland, and Howard punched, kicked, and beat him for approximately two to three minutes while he was on the floor. Plaintiff claims that he remained handcuffed behind his back during the entire assault.

Plaintiff alleges that defendants Anderson, Lowery, and Moore witnessed the assault but failed to intervene.  Rather, they urged the other officers to continue beating plaintiff and tried to cover up the assault.

Plaintiff contends that while he was lying on the floor, defendant Anderson stood over him and said, "Get up and go back to your cell and don't say nothing about what just happened."  (Doc. 19, Ex. 2, Tillman Aff. at 2).  Plaintiff told defendant Anderson that he wanted to see Lieutenant Gray and Sergeant Cook and that he needed to go to the infirmary for medical assistance.  He claims defendants Cleveland and Anderson warned plaintiff that if he insisted on going to the infirmary and talking with either supervisor, he would be written up for assaulting defendant Desindes to justify defendants beating plaintiff.

Plaintiff states that defendant Moore called Lieutenant Gray and Sergeant Cook to the scene and that Lieutenant Gray escorted plaintiff to the infirmary for a body chart.  Defendant Desindes wrote plaintiff a disciplinary for assault on a DOC official.  Plaintiff was later found guilty after a disciplinary hearing.

Plaintiff's  excessive force claims against defendants must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*:  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment

> are needed to preserve internal order and discipline and to
> maintain institutional security.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Construing the facts in a light most favorable to plaintiff, he claims that defendants Desindes, Cleveland, and Howard intentionally and maliciously attacked him. Moreover, no force was necessary and plaintiff was handcuffed behind his back.

On the other hand, defendant Desindes alleges that plaintiff kicked him in his lower back as he escorted plaintiff from the shower. Defendant Desindes claims that he and defendant Anderson grabbed plaintiff's arms to gain control of him and escorted him out of the block into the hallway to take him to the segregation office. Defendant Desindes asserts that plaintiff became combative, and he placed plaintiff on the left side of the hallway. Desindes claims plaintiff's head struck the barbershop window, causing it to crack.

Defendant Cleveland does not allege that he escorted plaintiff from the shower as plaintiff claims. Instead, Cleveland claims that when he arrived on the scene, defendants Desindes and Anderson had plaintiff in handcuffs and in an escort position against the wall where the barbershop is located. He alleges that he then walked to the segregation office and notified Lieutenant Gray and Sergeant Cook that defendants Desindes and Anderson needed them in D-E hallway. Cleveland claims he has no further knowledge of the incident.

Defendant Howard alleges that on the night in question, he was operating E-Cubicle and did not witness any misconduct by any officers.  Howard does not address plaintiff's claims that he personally assaulted him.

It is well established that assessing the credibility of the allegations made by the plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1986).  The facts presented by the parties show that a genuine dispute exists between plaintiff's and defendants Desindes, Cleveland, and Howard's versions of the facts in connection with the February 10, 2013, incident.  Therefore, defendants Desindes, Cleveland, and Howard's motion for summary judgment on plaintiff's Eighth Amendment excessive force claim is due to be denied.

As a result of the alleged assault, plaintiff sustained three small superficial tears to the mucous membrane inside the left side of his mouth.  There was slight swelling noted on the left side of plaintiff's cheekbone and the temporal area on the left side of plaintiff's head.  Plaintiff also had a 3-cm swelling on the side of his head approximately 3-4 inches past his ear.  Later, plaintiff "passed out" in his cell and was diagnosed with a mild concussion.

Defendants allege that plaintiff did not sustain significant injury as a result of the alleged use of excessive force.  The extent of injury suffered is but one factor to be considered in determining whether the use of force was wanton or unnecessary. *See Hudson*, 503 U.S. at 7.  The U.S. Supreme Court in *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1179 (2010), clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force – specifically, whether [the force] was nontrivial and "was applied . . . maliciously and sadistically to cause harm." (quoting *Hudson*, 503 U.S. at 7).  Even if plaintiff's injuries were not severe, his allegations, if proven at trial, would establish that defendants Desindes, Cleveland, and Howard's use of force was wanton and unnecessary.

To the extent defendants Desindes, Cleveland, and Howard argue that they are entitled to qualified immunity with regard to plaintiff's excessive force claim,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution . . . .  There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.  The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment.  If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  Because plaintiff has

alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive force claims, defendants Desindes, Cleveland, and Howard's motion for summary judgment on the basis of qualified immunity is also due to be denied.

**C.**    **Eighth Amendment Failure to Protect – Defendants Anderson, Lowery & Moore**

Plaintiff alleges that defendants Anderson, Lowery, and Moore looked on as defendants Desindes, Cleveland, and Howard attacked him and failed to intervene and protect him.  Plaintiff further alleges that defendants Anderson, Lowery, and Moore urged defendants Desindes, Cleveland, and Howard to continue beating plaintiff.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officials the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  It is clear, however, that not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

"In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)). It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious," harm that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "the known risk of injury must be a 'strong likelihood, rather than a mere

possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835.

Plaintiff has sufficiently alleged facts to demonstrate that defendants Anderson, Lowery, and Moore failed to protect him from Desindes, Cleveland, and Howard's alleged assault. According to the factual allegations presented by plaintiff, defendants Anderson, Lowery, and Moore witnessed these officers use excessive force against plaintiff but failed to intervene and protect him. Instead, defendants Anderson, Lowery, and Moore urged defendants Desindes, Cleveland, and Howard to continue assaulting plaintiff and attempted to cover up the alleged assault. This type of allegation, if proven, establishes that defendants Anderson, Lowery, and Moore knew of a substantial danger to plaintiff but were deliberately indifferent to plaintiff's safety. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002)

("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for non-feasance."); *see also Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986) ("Petitioner's claim, based on respondents' negligence, is quite different from one involving injuries caused by an unjustified attack by prison guards themselves, or by another prisoner where officials simply stood by and permitted the attack to proceed.").

Defendant Anderson alleges that plaintiff kicked defendant Desindes in the lower back.  He claims that he and defendant Desindes grabbed plaintiff's arms to gain control over him and escorted him to the segregation office.  He states that plaintiff became combative and was placed against the wall, striking his head on the barbershop window.

Defendant Lowery alleges that on February 10, 2013, he was on his post in E-Block escorting inmates to and from the shower.  Defendant Lowery claims that he did not witness the alleged incident and does not have any knowledge of it.

Defendant Moore states that defendants Desindes and Anderson were escorting plaintiff when plaintiff kicked defendant Desindes in the lower back.  He claims Desindes and Anderson grabbed plaintiff's arms to regain control of him.  Defendant Moore claims that as Desindes and Anderson escorted plaintiff out of the block,

plaintiff became combative in the hallway. He states that defendant Desindes placed plaintiff on the barbershop window. Defendant Moore contends that at this time, Lieutenant Gray and Sergeant Cook entered the D-E hallway.

As stated previously, assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). The facts presented by the parties show a genuine dispute over whether defendants Anderson, Lowery, and Moore failed to protect plaintiff from defendants Desindes, Cleveland, and Howard's alleged use of force on February 10, 2013. Therefore, defendants Anderson, Lowery, and Moore's motion for summary judgment as to plaintiff's Eighth Amendment failure to protect claims is due to be denied.

To the extent defendants Anderson, Lowery, and Moore argue that they are entitled to qualified immunity, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, plaintiff's version of the facts – that defendants Anderson, Lowery, and Moore were present when defendants Desindes, Cleveland, and Howard allegedly assaulted him but failed to intervene and protect him – establishes a constitutional violation. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002); *see also Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986). Second, the duty of an officer to protect inmates in their care from assault by fellow officers had been clearly established for years prior to Anderson, Lowery, and Moore's alleged failure to intervene and protect plaintiff on this occasion. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993), *as amended*, 14 F.3d 583 (11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). As such, defendants Anderson, Lowery, and Moore's motion for summary judgment on the basis of qualified immunity is also due to be denied.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS the following:

(1)     Defendants' motion for summary judgment on plaintiff's claims against them in their official capacities for monetary damages be GRANTED and the claims be DISMISSED with prejudice;

(2)     Defendants Desindes, Cleveland, and Howard's motion for summary judgment on plaintiff's Eighth Amendment excessive force claims be DENIED;

(3)     Defendants Desindes, Cleveland, and Howard's motion for summary judgment on plaintiff's Eighth Amendment excessive force claims on the basis of qualified immunity be DENIED;

(4)     Defendants Anderson, Lowery, and Moore's motion for summary judgment on plaintiff's Eighth Amendment failure to protect claims be DENIED; and

(5)     Defendants Anderson, Lowery, and Moore's motion for summary judgment on plaintiff's Eighth Amendment failure to protect claims on the basis of qualified immunity is due to be DENIED.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.** Failure to do

so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff and counsel for defendants.

DONE this 3rd day of July, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE